UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



******************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 13-30156-RAL |
| Plaintiff, | * | |
| | * | REPORT AND RECOMMENDATION |
| -vs- | * | FOR DISPOSITION OF MOTION |
| | * | TO SUPPRESS STATEMENT |
| RICHARD PENEAUX, | * | |
| Defendant. | * | |

******************************************************************************

## SUMMARY

Richard Peneaux, an adult, was suspected of having sex with a young teenage girl, five years younger than him, in his apartment on the Rosebud Indian Reservation. Federal and tribal agents interviewed him, while he was in jail, and he made statements which he now seeks to suppress. Because the statements were lawfully obtained, the Court recommends that Peneaux's suppression motion be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2013, Ben Estes, a special agent with the Rosebud Sioux Tribal police department, was notified that K.Y.E., at 14-year-old girl, had possibly been sexually assaulted. Peneaux, who was 19 at the time, was believed to have committed the assault. He had been arrested, on two tribal warrants, earlier in the day and was being housed at the Rosebud Sioux Tribe Detention Center. Agent Estes contacted FBI Special Agent Chris

Cressy, and the two met with and interviewed Peneaux that same evening in the Detention Center.

After being Mirandized and agreeing to talk to agents, Peneaux admitted that he knew K.Y.E., but insisted that she was just a "friend". Later in the interview, he acknowledged that he and she "were together" and had been "going out" for about a month in May-June 2013, but was resolute that they did not engage in any kind of sexual contact. About an hour into the interview, he confessed that he had consensual sexual intercourse with K.Y.E. on three separate occasions, twice in Valentine, Nebraska two months or so ago, and once in Mission, South Dakota on August 12.

The next month, Peneaux was indicted by a federal grand jury and charged with sexual abuse of a minor. Following his arraignment, he moved to suppress his August 12 statements to Agents Cressy and Estes claiming that they were solicited without a proper advisement and waiver of his *Miranda* rights.

The Government filed a response to the motion, resisting Peneaux's claims. A hearing was held on November 7, 2013, at which both agents testified and two exhibits were received into evidence. Peneaux is scheduled to stand trial in January, 2014.

## DISCUSSION

A. *Miranda* **Advisement**

Peneaux claims that he was not properly advised of his rights. Although he does not elaborate on this claim, it is assumed that he contends that the *Miranda* advisement

2

given to him was deficient. The audio recording of the interview[1] though indicates otherwise.

In *Miranda v. Arizona*[2] the United States Supreme Court established certain procedural safeguards that require police to advise a criminal suspect of his rights under the Fifth Amendment before commencing custodial interrogation. There, the Supreme Court said that the suspect must be told that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires."[3] The Court in *Miranda* "presumed that interrogation in certain custodial circumstances is inherently coercive and . . . that some statements made under those circumstances are inadmissible unless the suspect is specifically warned of his *Miranda* rights and freely decides to forego those rights."[4]

The Supreme Court has never insisted that *Miranda* warnings be given in the exact form described by the *Miranda* decision. In the decision itself, the Court said that "[t]he warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent*, prerequisites to the admissibility of any statement

---

[1] *See* Mot. Hrg. Ex. 1 (Nov. 7, 2013).

[2] 384 U.S. 436 (1966).

[3] *Id.* at 479.

[4] *New York v. Quarles*, 467 U.S. 649, 654 (1984) (footnote omitted).

made by a [suspect]."[5] The Court later observed that "the 'rigidity' of Miranda [does not] extend[ ] to the precise formulation of the warnings given a criminal [suspect]," and that "no talismanic incantation [is] required to satisfy its strictures."[6]

Here, Agent Cressy read out loud to Peneaux – almost verbatim – his Miranda rights from an advice of rights form. He also gave Peneaux the opportunity to read the form to himself. Peneaux looked at the form and ultimately signed the consent portion of the same, acknowledging that he had read and understood what his rights were. The evidence presented unequivocally shows that Peneaux was warned, with precision, of all of his rights in accordance with the dictates of Miranda.

## B. Waiver

Peneaux also claims that his Miranda waiver was invalid. He argues that he did not knowingly and voluntarily waive his rights.

There are "two distinct dimensions" to the inquiry into whether a suspect's waiver of his Miranda rights was valid.[7] First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or

---

[5]Miranda, 384 U.S. at 476 (emphasis added); see also Rhode Island v. Innis, 446 U.S. 291, 297 (1980) (referring to the "now familiar Miranda warnings . . . or their equivalent").

[6]California v. Prysock, 453 U.S. 355, 359 (1981) (per curiam).

[7]Moran v. Burbine, 475 U.S. 412, 421 (1986).

4

deception."[8] Second, the suspect must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[9] The totality of the circumstances must be considered when determining the validity of the waiver.[10]

1.  **Voluntariness**

The same analysis concerning the voluntariness of a suspect's statements under the Fifth Amendment applies to determine whether the suspect's *Miranda* waiver was voluntary.[11] Under either analysis, "absent evidence that the [suspect's] will [was] overborne and his capacity for self-determination critically impaired because of coercive police conduct", a waiver of *Miranda* rights would be considered voluntary.[12]

The Court has scrutinized the record evidence now before it with these precepts in mind. In the process, the Court has evaluated the conduct of the agents and Peneaux's ability to resist pressure and inducements brought to bear on him. Having considered all of the factors relevant to the voluntariness inquiry, the Court concludes that the requisite

---

[8]*Id.*

[9]*Id.*

[10]*See id.*

[11]*See United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995) (a court must consider the conduct of the police when determining whether the defendant's will was overborne with regard to either his confession or his *Miranda* waiver).

[12]*Colorado v. Spring*, 479 U.S. 564, 574 (1987).

5

coercive or overreaching conduct necessary to render Peneaux's statements involuntary was lacking. Several facts support this conclusion.

Peneaux was read and acknowledged he understood his *Miranda* rights and signed a waiver of them. He agreed to talk to agents about K.Y.E. and did so for an hour and 20 minutes.

At no time did agents ever threaten, promise, mislead, cajole or force Peneaux to do anything. Nor did they employ physical punishment, brandish their weapons or yell at him. And while with agents, Peneaux was not under the influence of alcohol or drugs and nothing he said or did intimated that he suffered from any form of mental incapacity, was low functioning or particularly suggestible and vulnerable to questioning by authority figures.

Significantly, Peneaux was willing to talk to agents, even after several lulls in the conversation and Agent Cressy's tacit indications that the interview was over. Peneaux actively and coherently participated in a back and forth, linear discussion with agents, bringing up mitigating circumstances, denying that he forced K.Y.E. to do anything, and attempting to legitimize his relationship with her and what he did by asserting that her mother knew and approved of their relationship and to them having sex with each other. He portrayed himself as her friend and confidant who listened and was there for her when she talked about her problems (getting raped, cutting herself and thinking about death). But he was quick to point out that she had other boyfriends and that she was the one who asked him out.

Peneaux's interview was not impermissibly coercive. There was no arm twisting or rubber hose machinations to it. The audio recording reveals that he was in complete control of his faculties and that he possessed the wherewithal and fortitude to (a) lie and temper his admissions and (b) refuse to provide a buccal swab (twice) and disclose the names of other (older) females he had been with. On this record, when considered in light of Peneaux's personal characteristics (a 19-year-old probationer with both a state and tribal criminal history who could read, write and understand the English language), agents did not overwhelm his will and extort incriminating statements from him.

In the final analysis, this is not one of those "rare" instances in which a suspect, after being properly advised of his *Miranda* rights, failed to make an open and autonomous decision to speak with probing agents and incriminate himself.[13] Peneaux's statements, while late in coming, were nonetheless voluntary.

## 2. Awareness

With respect to the second inquiry, the written consent Peneaux executed constitutes potent evidence that he had a clear understanding of his rights and gave them up.[14] So too does the fact that he was conversant in the English language and had prior experience in the criminal justice system. Agent Cressy read out loud the *Miranda* rights

---

[13] *See Dickerson v. United States*, 530 U.S. 428, 444 (2000).

[14] *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979) ("an express written . . . statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver")

7

portion of the form. Peneaux verbally affirmed that he understood his rights, signed the form, without being shown where to do so, and proceeded with the interview without the assistance of an attorney.

Notably, Peneaux never invoked any of his rights during the interview and freely conversed with Agents Cressy and Estes, answering the questions, relating to K.Y.E., agents posed to him. And he was the one who ultimately volunteered, after some pause and without being specifically questioned, that he had sex with K.Y.E. twice, and then a third time.

There is nothing in the record to suggest that Peneaux was incapable of waiving his rights because he was intoxicated, hung over or sleep deprived. Nor did he say or do anything that signaled an inability, on his part, to comprehend and appreciate his rights and the implications of what he was doing. Instead, he was quite cognizant of his situation and torn between sticking with the story he had given to agents (which he knew was not true) or coming clean and telling them what really took place.

The evidence establishes, to the Court's satisfaction, that Peneaux understood his rights and knowingly, voluntarily and intelligently waived them. Having done so, his statements are admissible at trial.

## CONCLUSION

Peneaux was advised of all of his rights, waived them and made unconstrained statements to agents on August 12, who together took no action that could be considered as coercion or overstepping their bounds. His motion – which seeks to suppress these

statements from being used as evidenced at trial – is therefore without merit and provides him with no basis for relief.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Peneaux's Motion to Suppress Statement[15] be denied for the reasons, and based on the authorities, stated herein.

## NOTICE

An aggrieved party must file written objections, within 14 calendar days, to challenge this Report and Recommendation before the assigned United States District Judge.[16]

Dated this 13th day of November, 2013, at Pierre, South Dakota.

BY THE COURT:

/s/ Mark A. Moreno
MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[15] See Dkt. No. 25.

[16] See 28 U.S.C. §636(b)(1).